**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOSHUA SEIDMAN, et al.,**

                     **Plaintiffs,**

      v.                                               **1:18-CV-202**
                                                       **(TJM/CFH)**

**STATE TROOPER JOSEPH COLBY, et al.,**

                       **Defendants.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**

## DECISION & ORDER

    Plaintiffs Joshua Seidman and Christopher Hanold allege that Defendants, New York State Trooper Joseph Colby and an unnamed second Trooper, violated their constitutional rights. Defendant Colby has filed a motion to dismiss Plaintiffs' claims. The parties have briefed the issues and the Court has determined to decide the matter without oral argument.

**I.    BACKGROUND**

    Plaintiffs allege that at approximately 3:45 a.m. on January 24, 2016, Defendants pulled over the vehicle Plaintiff Hanold was driving; Seidman was a passenger. Complaint ("Complt."), dkt. # 1, at ¶ 17. Defendants informed Plaintiffs that they pulled them over for a missing license plate lamp. Id. at ¶ 19. Defendants directed Plaintiffs to exit the vehicle, alleging that the Troopers smelled marijuana. Id. at ¶ 21. Plaintiffs contend that the

1

license plate lamp worked at the time. Id. at ¶ 20. After Plaintiff Seidman handed Defendants "a small amount of marijuana and a pipe," Defendants searched the vehicle. Id. at ¶¶ 22-23. When this search failed to uncover further contraband, Defendants issued each Plaintiff an appearance ticket for unlawful possession of marijuana and released them. Id. at ¶ 24.

Plaintiffs allege that at around 6:30 a.m. Defendants arrived at Hanold's home and "entered the property without a warrant, permission, or exigent circumstances." Id. at ¶ 26. Defendants arrested Hanold and took him away. Id. Next, Defendants went to Seidman's home and "entered the home without permission, a warrant, or exigent circumstances." Id. at ¶ 29. At this point, Defendants allegedly explained to Seidman that the substance he had given them tested positive as hashish. Id. Possession of hashish is a misdemeanor and not a violation, like marijuana possession, and Defendants claimed that they were required to arrest Seidman. Id. at ¶ 32. Plaintiffs insist that Defendants knew that the substance Seidman had given them was marijuana, not hashish, and knew that the test to identify marijuana or hashish could not differentiate between the two substances. Id. at ¶ 30. Plaintiffs further allege that Defendants had positively identified the substance as marijuana when they issued the original appearance tickets. Id.

Defendants brought both Plaintiffs to their barracks. Id. at ¶ 35. Troopers released Plaintiff Hanold around 8:00 a.m. Id. at ¶ 36. Defendants allegedly "screamed at, insulted, and threatened" Seidman while he was at the station. Id. at ¶ 37. Plaintiffs allege that Defendants lied to the Ulster County District Attorney's office, claiming that Seidman had violated New York Penal Law § 220.03, criminal possession of a controlled substance in the seventh degree. Id. at ¶ 38; see N.Y. Penal Law § 220.03. Defendant

2

Colby allegedly reviewed and signed the resulting criminal complaint though he knew that it contained false allegations. Complt. at ¶¶ 40-41. New Paltz Town Court Judge Jonathan Katz, after an arraignment the same day, directed Defendants to release Seidman from the barracks on his own recognizance. Id. at ¶¶ 44-45.

Plaintiff allege that prosecutors terminated the charge of criminal possession of a controlled substance in the seventh degree in Seidman's favor on February 17, 2016. Id. at ¶ 52. The court also granted an adjournment in contemplation of dismissal on the original unlawful possession of marijuana charge. Id. at ¶ 53. The court terminated all charges in favor of Hanold on the same day. Id. at ¶ 54. Plaintiffs contend that, by their actions, Defendants deprived them of liberty and caused them to suffer "emotional distress, physical injury, mental anguish, fear, anxiety, embarrassment, humiliation, and damage to [their] reputation[s]." Id. at ¶ 51.

Plaintiffs filed the instant Complaint on February 15, 2018. The Complaint raises seven causes of action against Defendant Colby and Defendant John Doe in their individual and official capacities. See Compl. at ¶¶ 11, 15. The complaint alleges an unlawful stop and search, illegal entry, false arrest, denial of a right to a fair trial, malicious prosecution, conspiracy under 42 U.S.C. § 1983, and failure to intervene. See id. at ¶¶ 57-85.

After Plaintiffs served the Complaint on Defendant Colby, Colby filed the instant motion to dismiss. The parties have briefed the issues, bringing the case to its present posture.

**II.     LEGAL STANDARD**

Defendant Colby has filed a motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). See Dkt. No. 10 at 1. Defendant argues that Plaintiffs failed to state a claim upon which relief could be granted, even if all factual allegations in the complaint were proved true. In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and [draw] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). This tenet does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).

## III.    DISCUSSION

In responding to Defendant's motion to dismiss, Plaintiffs concede that they cannot state a claim on a number of issues. First, Plaintiffs concede that the Eleventh Amendment bars all claims against Defendant Colby in his official capacity. Plaintiffs also admit that the Court should dismiss their claim of an illegal search of Hanold's vehicle. Plaintiff Seidman's production of marijuana gave Defendants probable cause for the search. Plaintiffs maintain, however, that they have stated a claim for an illegal stop.

As to the malicious prosecution claims, Seidman concedes that he cannot sustain a claim of malicious prosecution on the marijuana charge because the marijuana possession charge was not completely dismissed in his favor. Plaintiffs also concede that the Court should dismiss Hanold's claim of malicious prosecution as he is unable to show

4

sufficient post-arraignment deprivation of liberty. Plaintiffs make no concessions regarding Seidman's claim of malicious prosecution as it relates to the charge of criminal possession of a controlled substance.

Given these concessions, the Court will dismiss all claims against Defendant Colby in his official capacity, both Plaintiffs' claims arising out of the marijuana possession charges, and the claim of an illegal search of Hanold's vehicle as unopposed. Such dismissals will be with prejudice.

### A. Illegal Search

Plaintiffs have conceded that they cannot maintain claims for an illegal search of the vehicle but retain their claim of an "unlawful stop." As this claim is in essence a claim of illegal seizure of Plaintiffs' persons, the Court will interpret such a claim as a false arrest. The Court addresses this claim below.

### B. Illegal Entry

Defendant challenges Plaintiffs' Fourth Amendment illegal entry claim. The Fourth Amendment protects "[t]he right of the people to be secure in their persons [and] houses . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Welsh v. Wisconsin, 466 U.S. 740, 748 (1984) (quoting United States v. United States District Court, 407 U.S. 297, 313 (1972)). "[A] principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest." Id. The Supreme Court has thus held that "searches and

5

seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586 (1980). Some "specifically established and well-delineated exceptions" to the warrant requirement exist. United States v. Delva, 858 F.3d 135, 147 (quoting Mincey v. Arizona, 437 U.S. 385, 390 (1978)). These include "protective sweeps" during the execution of an arrest warrant, entries into a home under exigent circumstances, and seizure of evidence in "plain view." See id. at 147-48.

The complaint alleges that Defendants "entered [Hanold's] property without a warrant, permission, or exigent circumstances." Defendants also allegedly "entered [Seidman's] home without permission, a warrant, or exigent circumstances" and followed him into his bedroom while he dressed. Accepting these allegations as true, Plaintiffs have plausibly alleged a Fourth Amendment violation. Such warrantless entries are presumptively unconstitutional. No facts alleged in the Complaint indicate that Defendants could not have attempted to obtain a warrant before apprehending Plaintiffs at their homes or were otherwise permitted warrantless entry to their properties. Colby argues that the search of Hanold's car was supported by probable cause but does not defend his entry onto Plaintiffs' properties. The facts as alleged do not permit him to do so. Plaintiff alleges that Defendants allowed Plaintiffs to leave after the search of the car and they were not in "hot pursuit." Under these alleged circumstances, Plaintiffs has plausibly alleged that no risk existed that evidence would be destroyed; the Defendants had seized the marijuana during the initial stop. Defendants had no reason to enter Plaintiff's property without a warrant. Plaintiff have alleged facts sufficient to make it plausible that the entries in question were a violation of Plaintiffs' Fourth Amendment rights. The Court will therefore deny the motion in this respect.

6

### C. False Arrest

Defendant further seeks dismissal of Plaintiffs' false arrest claims. "Under New York law, a plaintiff claiming false arrest must show, *inter alia*, that the defendant intentionally confined him without his consent and without justification." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citing Broughton v. State, 37 N.Y.2d 451, 456 (1975). "A § 1983 claim for false arrest, resting on the Fourth Amendment . . . is substantially the same as a claim for false arrest under New York law." Id. (citations omitted). When an officer makes a warrantless arrest, he has acted "extrajudicially" and the arrest is presumed unlawful. Broughton, 37 N.Y.2d at 458. However, one may rebut this presumption by showing that probable cause existed at the time of arrest. Id. For a false arrest claim, the arrest is not required to be "in any sense formal." Posr v. Doherty, 944 F.2d 91, 96 (2d Cir 1991) (citing People v. Hicks, 500 N.E.2d 861, 864 (N.Y. 1986)).

"Probable cause requires an officer to have 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (quoting Martinez v. Simonetti, 202 F.3d 625,644 (2d Cir. 2000). "When determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it." Id. Colby argues, and Plaintiffs concede, that Seidman's production of the marijuana provided the troopers with probable cause to search the vehicle and make an arrest. Colby's memorandum in support of his motion, however, argues only that the search of Hanold's car could not support an unlawful search claim. He offers no argument defending the

7

initial stop. Plaintiffs plausibly allege, however, that an unlawful stop had already occurred before Plaintiffs turned over the contraband or received written tickets. The only justification given by the officers for the initial stop was a missing license plate lamp. The regulations of the New York Commissioner of Motor Vehicles require license plate lamps, and an absent or non-functional light would have provided Defendants with probable cause to stop Hanold's vehicle. See 15 CRR-NY § 43. Plaintiffs allege, however, that the license plate bulb was functioning, and that Defendants' claims to the contrary were manufactured as a justification for a stop without actual cause. Accepting all factual allegations in the Complaint as true, Defendants' asserted justification for the stop was a falsehood. The subsequent intentional confinement was enough of an "arrest" to support a claim of false arrest under New York law. The Court will therefore deny the motion in this respect.[1]

### D. Denial of Right to a Fair Trial

Plaintiffs allege that, by forwarding false evidence to prosecutors, Defendants violated their right to substantive due process under the Due Process Clause of the Fifth and Fourteenth Amendments. Defendant seeks dismissal of these claims. The Fifth Amendment is only applicable to the federal government, not state governments. See Dusenbery v. United States, 534 U.S. 161, 167 (2002). To the extent that this claim relies

---

[1]The unlawful initial stop does not mean that any subsequent search was automatically illegal. The "fruit of the poisonous tree" doctrine, which would make evidence discovered in a search subsequent to an illegal arrest inadmissible in a criminal trial, does not apply to cases brought pursuant to Section 1983. See Townes v City of New York, 176 F.3d 138, 146 (2d Cir. 1999) ("The fruit of the poisonous tree doctrine . . . disregards traditional causation analysis" because "[t]o extend the doctrine to § 1983 actions would impermissibly recast the relevant proximate cause inquiry to one of taint and attenuation.").

8

on the Fifth Amendment, it is dismissed with prejudice. "Any due process rights plaintiff enjoys as against state government officials . . . arise solely from the Fourteenth Amendment due process clause." Maddox v. Fowler, No. 14cv1068, 2015 WL 4366222 at *10 (N.D.N.Y. July 16, 2015).

The purpose of the substantive due process clause is "to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.'" Collins v. City of Harker Heights, 503 U.S. 115, 126 (1992) (quoting DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 196 (1989)). To state a substantive due process claim, Plaintiff must allege behavior that "'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Id. at 848. The guarantee provided by the substantive due process clause does not "impos[e] liability whenever someone cloaked with state authority causes harm." Lewis, 523 U.S. at 848. Common law tort liability does not define the test for "shocking" conduct. Id.

The inquiry into whether particular conduct is conscience shocking "is highly context-specific." Bolmer v. Oliveira, 594 F.3d 134, 143 (2d Cir. 2010). The Court is to examine "'the totality of the facts in a given case.'" Id. (quoting Lewis, 523 U.S. at 850). In Ricciuti v. N.Y.C Transit Authority, the plaintiffs were prosecuted for assaulting a corrections officer. 124 F.3d 123, 125. After the altercation occurred, a defendant police officer arrested plaintiff Alfred Ricciuti and brought him to the Transit Police Station. Id. There, another defendant, a transit officer who was present at the station, filed second-

9

degree assault charges against Ricciuti and his nephew. Id. at 126. That defendant also initiated an investigation into whether the assault was motivated by racial bias. Id. An unsigned memorandum authored by the second defendant contained Ricciuti's confession and statements suggesting a racial motivation for the assault. Id. The statement played a significant role in the investigation. Id. The plaintiffs claimed the confession was fabricated and denied making any racial comments. Id. Based in part on this "confession," the district attorney's office added a charge of aggravated harassment in the second degree, a more serious charge that requires evidence of a racial motivation. Id. at 126-27. A judge ultimately dismissed all charges when the officer who alleged racial motivation did not appear to testify. Id. at 127. The court concluded that "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." Id. at 130.

Plaintiffs allege that Defendants knowingly created false evidence against them and provided that false evidence to prosecutors. Such alleged conduct amounted to a deliberate act designed to cause Plaintiffs to be charged with more serious offenses. Without these false statements, Plaintiffs would have faced only violations charges. Plaintiffs allege that Defendants deliberately and falsely caused them to be charged with offense for which they knew Plaintiffs were not liable, and then went to their homes and arrested them. Following Ricciuti, the fabrication of evidence against Plaintiffs violated their right to a fair trial and is actionable under § 1983. The Court will therefore deny the motion in this respect.

### E. Malicious Prosecution

Defendant next seeks dismissal of Plaintiffs' malicious prosecution claims. A plaintiff who brings a Section 1983 malicious prosecution claim must "show 'a seizure or other perversion of proper legal procedures implicating [his] personal liberty and privacy interests under the Fourth Amendment.'" Lanning v. City of Glens Falls, 908 F.3d 19, 24 (2d Cir. 2018) (quoting Washington v. County of Rockland, 373 F.3d 310, 316 (2d Cir. 2004)). The plaintiff must also "show that criminal proceedings were initiated or continued against him, with malice and without probable cause, and were terminated in his favor." Id. In determining whether the case terminated favorably for the plaintiff, "federal law defines the elements of a § 1983 malicious prosecution claim, and . . . a State's tort law serves only as a source of persuasive authority rather than a binding precedent in defining those elements." Id. at 25. A court applying New York law to a tort claim, however, "must faithfully apply New York tort law." Id. at 28. The Fourth Amendment is not state tort law, and "[w]hen a person has been arrested and indicted, absent an affirmative indication that the person is innocent of the offense charged, the government's failure to proceed does not necessarily 'impl[y] a lack of reasonable grounds for the prosecution.'" Id. (quoting Conway v. Village of Mount Kisco, 750 F.2d 205, 215 (2d Cir. 1984)). To maintain a Section 1983 claim, then, a plaintiff must allege that "the criminal proceedings against him were terminated in a manner indicating his innocence." Id. at 29.

As explained above, the only claim of malicious prosecution that remains is Seidman's claim concerning his prosecution for criminal possession of a controlled substance. The Complaint alleges that Defendants charged Seidman under New York Penal Law § 220.03; that action satisfies the initiation of prosecution element of a

11

malicious prosecution claim. See Ricciuti, 124 F.3d at 130. Plaintiffs plausibly allege that no probable cause existed for this charge. Defendants allegedly "knew that the substance Mr. Seidman had given them was marijuana" and not hashish. Complt. ¶ 30. The results of a test that Defendants knew could not differentiate between hashish and marijuana and contradicted their own initial observations cannot be said to be "reasonably trustworthy."

Plaintiffs plausibly allege the third element–malice–as well. "A lack of probable cause generally creates an inference of malice." Boyd v. City of New York, 336 F.3d 72, 78 (2d Cir. 2003). "[M]alice may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives" or "commenced in bad faith to vex, annoy, or harass the adverse party." Pinsky v. Duncan, 79 F.3d 306, 313 (2d Cir. 1996). After the officers had picked up Hanold, Plaintiffs allege that they told him that "if Mr. Seidman had never said he was a lawyer, the whole thing would have been over." This statement, if proved, would demonstrate an improper animus towards Seidman that supports a malicious prosecution claim.

"Under the common law any final termination of a criminal proceeding in favor of the accused, such that the proceeding cannot be brought again, qualifies as a favorable termination for purposes of a malicious prosecution action." Poventud v. City of New York, 750 F.3d 121, 130-31 (2d Cir. 2014) (quoting Smith-Hunter v. Harvey, 734 N.E. 2d 750, 373 (2000)). A termination is not favorable in this sense, however, "'if the charge is withdrawn or the prosecution abandoned pursuant to a compromise with the accused.'" Id. at 131. The complaint simply states that "[t]he charge of criminal possession of a controlled substance in the seventh degree was terminated in favor of Mr. Seidman." This allegation simply recites the final element of a malicious prosecution claim, and does not

12

allege facts sufficient to plausibly suggest that the charges could not be brought again. Without such an allegation, Plaintiff's malicious prosecution claim must fail. The Court will grant the motion to dismiss in this respect. The Court will grant the motion without prejudice to repleading, however, as Plaintiffs may be able to allege facts to make plausible the rest of this claim.

### F. Failure to Intervene

Defendant also moves for dismissal of Plaintiffs' failure-to-intervene claim. When a police officer "observes or has reason to know . . . that a citizen has been unjustifiably arrested . . . or that any constitutional violation has been committed by a law enforcement official," he may be liable for any preventable harm caused. Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." Id. In Ricciuti, the court held that a reasonable jury could find both the officer who created false evidence and the other officer who was present liable under § 1983 for failing to intervene. 124 F.2d at 129.

As addressed above, Plaintiffs have plausibly alleged a false arrest. Officers alleged stopped Hanold's car without justification. Plaintiffs also allege other constitutional violations related to the false evidence supposedly forwarded to prosecutors and used to bring charges the Defendants knew to be false. Under these alleged circumstances, both Defendants, if they had a "realistic opportunity to intervene" in the Constitutional violations, had an obligation to do so. Either trooper could have reported the falsified evidence to the district attorney's office. As the Defendants supposedly knew that the substance they found was marijuana, they also had to know that the test results they reported were

13

incorrect. Like in Ricciuti, both Defendants were present and knew that false evidence was being presented to prosecutors in order to charge Plaintiffs with a more serious offense. Knowing this, they had a duty to intervene. Nothing alleged in the complaint indicates that the circumstances prevented either trooper from doing so.

Defendant argues that because Plaintiffs allege he was a direct participant in the constitutional violations he cannot also be liable for failing to intervene. See Sanabria v. Tezlof, No. 11cv6578, 2016 WL 4371750 at *5 (S.D.N.Y., Aug. 12, 2016) ("Where the officer is a direct participant in the allegedly unlawful conduct, the failure to intervene theory of liability is inapplicable."). In response, Plaintiffs rely on Gomez v. City of New York, No. 16cv1274, 2017 WL 1034690 (E.D.N.Y. Mar. 15, 2017). The court in Gomez found that a motion for judgment on the pleadings was too early to dismiss the plaintiff's claim for failure to intervene at such an early stage in the proceedings. Id. at *10. "[O]n either of Plaintiff's surviving claims, it is conceivable that one of the two Officer Defendants may not be found directly liable, while the other may escape direct liability but nonetheless be found liable for failure to intervene." Id. See also Jackson v. City of New York, 939 F. Supp. 2d, 219, 231-32 (E.D.N.Y. 2013) ("because a genuine issue of material fact exists as to the extent of each defendant police officer's participation in Plaintiff's arrest . . . Defendants are not entitled to summary judgment on Plaintiff's claim for failure to intervene").

Assuming without deciding that the Southern District is correct that one cannot be liable for failure to intervene if they were also a direct participant, there is still a sufficient question of fact for the failure to intervene claim to survive a motion to dismiss. As the

14

record develops, Colby could be found directly liable on one or more of Plaintiffs' claims but still liable for failing to intervene  The Court will therefore deny the motion in this respect.

### G. Section 1983 Conspiracy

Defendant further seeks dismissal of Plaintiff's Section 1983 conspiracy claim.  "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors . . . (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  A complaint must contain more than "conclusory, vague, or general allegations that the defendants have engaged in a conspiracy." Ciambriello v. County of Nassau, 292 F.3d 307, 325 (2d Cir. 2002).  Plaintiffs must also "make an effort to provide some details of time and place and the alleged effect of the conspiracy."  Jessamy v. City of New Rochelle, 292 F. Supp. 2d 498, 513 (S.D.N.Y. 2003).  However, such conspiracies "are by their very nature secretive operations" and may be proven by circumstantial evidence.  Pangburn, 200 F.3d at 72 (quoting Rounseville v. Zahl, 13 F.3d 625, 632 (2d Cir. 1994)).

Here, Plaintiffs allege that Defendants, in order to "exact retaliation," "collectively [lied] about Plaintiffs' actions and conduct" and "intentionally withh[eld] and/or destroy[ed] exculpatory evidence."  Complt. at ¶ 79.  The Complaint alleges that both defendants were involved in the dishonest behavior that directly led to Plaintiffs' arrests and otherwise violated their constitutional rights.  Defendant argues that the conspiracy claims should be dismissed as "vague and conclusory" because Plaintiff failed to plead "specific facts

15

suggesting that there was a mutual understanding among the conspirators."

Plaintiffs allege a number of "overt acts" by the Defendants. Defendants allegedly acted in concert to present false evidence to the Ulster County District Attorney's Office. Based on these "fabricated allegations," the District Attorney filed a criminal complaint. According to the complaint, Defendants knew the substance they recovered from Seidman was marijuana and that the test to identify the substance could not differentiate between marijuana and hashish. Still, both defendants went to Plaintiffs' homes together to arrest them for possession of hashish. The complaint also alleges that Defendants "individually and collectively" lied to the District Attorney's Office to procure a criminal complaint. Id.. at ¶ 38. During the resulting criminal proceeding, Defendants "forwarded false evidence" to the District Attorney including "arrest reports, complaint reports, evidence vouchers, test results, and property vouchers." Id. at ¶ 46. Plaintiffs also made efforts to provide details of the time and place of the overt acts. The Complaint alleges that the acts occurred between the initial stop on January 24 and Seidman's arraignment in New Paltz Town Court.

Finally, while Plaintiffs do not directly allege an agreement between the two officers, the evidence summarized above provides plausible circumstantial evidence that the Defendants agreed to perform the alleged illegal acts. Such allegations make plausible an express or implied agreement. As the Second Circuit recognized in Pangburn, direct evidence of a conspiracy is often unavailable and circumstantial evidence will suffice. 200 F.3d at 72.

In Ricciuti, the court held that one officer could be found liable under § 1983 for conspiring with another to distribute a confession he knew to be false. 124 F.3d at 131

16

As in that case, the facts alleged in Plaintiff's complaint suggest that Defendants failed to intervene when the District Attorney presented falsified evidence to prosecutors. Both were present during the arrests and both knew that there was no probable cause to support the misdemeanor charge. Defendants, according to the Complaint, were both involved in forwarding the false evidence to the District Attorney. In Ricciuti, like here, there were no allegations of an express agreement between the officers, but the Court found circumstantial evidence existed to support finding a conspiracy. Id. Defendants here also told Hanold that "if Mr. Seidman had never said he was a lawyer, the whole thing would have been over." Complt. at ¶ 28. This statement supports Plaintiffs' assertion that Defendants were motivated by an animus towards Seidman because of his profession, indicating a shared purpose and goal. The Court will therefore deny the motion in this respect as well.

## IV.  CONCLUSION

For the reasons stated above, the Court will grant Defendant's motion to dismiss in part and deny the motion in part, as follows:

1. The motion is hereby **GRANTED** with prejudice with respect to any claims:

    (a) against Defendant Colby in his official capacity;

    (b) any claims related to an illegal search of Plaintiff's Hanold's vehicle;

    (c) any malicious prosecution claims arising from marijuana possession charges against Plaintiff Seidman;

    (d) all malicious prosecution claims brought by Plaintiff Hanold; and

    (e) any substantive due process claims based on the Fifth Amendment;

17

2. The motion is **GRANTED WITH LEAVE TO REPLEAD** with respect to Plaintiffs' malicious prosecution claim related to hashish possession by Seidman; and

3. The motion is hereby **DENIED** in all other respects.

.Should Plaintiffs choose to replead the cause of action dismissed without prejudice, Plaintiffs should file an Amended Complaint within twenty-one (21) days of the date of this Order. Any Amended Complaint should exclude any claims hereby dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: March 6, 2019

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge