**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JOSHUA SEIDMAN and CHRISTOPHER HANOLD,**

                      **Plaintiffs,**

    v.                                                     **1:18-CV-202
                                                                      (TJM/CFH)**

**STATE TROOPER JOSEPH COLBY and STATE
TROOPER JOHN DOE,**

                      **Defendants.**
_____

**Thomas J. McAvoy,
Sr. U.S. District Judge**

## DECISION & ORDER

In response to Defendants' answer to their Amended Complaint, Plaintiffs have filed a motion for judgment on the pleadings in this matter involving alleged police misconduct. See dkt. # 21. Plaintiffs contend they are entitled to judgment on their false arrest claims.[1] The parties have briefed the issues and the Court has determined to decide the matter without oral argument.

## I.    BACKGROUND

Plaintiffs allege that the Defendants violated their constitutional rights in a traffic stop on January 24, 2016. On that day, Plaintiff Christopher Hanold was operating a

---

[1]Defendants have filed a motion for reconsideration of the Court's decision granting in part and denying in part their motion to dismiss the original complaint Plaintiffs filed. See dkt. # 19. As the Defendants seek reconsideration of a decision addressing a pleading that is no longer operative, the Court will deny the motion for reconsideration as moot.

1

vehicle in the Town of New Palz, New York. Amended Complaint ("Amend. Complt."), dkt. # 21, at ¶¶ 17-18. Plaintiff Joshua Seidman was a passenger. Id. at ¶ 17. At that time, Defendant Joseph Colby was working as a Trooper for the New York State Police. Id. at ¶ 7. Defendant John Doe was also working as a Trooper for the New York State Police. Id. at ¶ 12. Trooper Doe worked as a "supervisor, officer, employee, and/or agent" of the State Police. Id. At around 3:45 a.m., the Defendants allegedly pulled Hanold's car over in the parking lot of the Plaza Diner in New Paltz. Id. at ¶ 18.

Plaintiffs allege that "the pretext" the Troopers used to stop the car was that the car was missing a rear license plate lamp. Id. at ¶ 19. Plaintiffs contend that this pretext was false, and that the car actually had a rear license plate lamp that worked. Id. at ¶ 20.

After stopping the car, Defendants purported to smell marijuana and directed both Plaintiffs to exit the vehicle. Id. at ¶ 21. Seidman then handed the Troopers a small amount of marijuana and a pipe that he had on his person. Id. at ¶ 22. He told the Troopers that he knew that marijuana possession amounted to a violation, not a misdemeanor, and that the Plaintiffs could not be arrested for a violation. Id. He claimed he did not "want to make their job any harder than it needed to be." Id. Seidman also asked officers to leave Hanold alone, since Seidman had given them the marijuana. Id.

The Troopers ignored this request and searched the vehicle, looking for marijuana. Id. at ¶ 23. They "tore the vehicle apart[.]" Id. The Plaintiffs waited outside in "twenty degree weather" as the officers conducted their search. Id. The search continued until approximately 4:30 a.m. Id. at ¶ 24. Defendants then issued both Plaintiffs appearance tickets for unlawful possession of marijuana and released them. Id. Hanold drove

2

Seidman home and then drove to his own residence.  Id. at ¶ 25.

At around 6:30 a.m., as Hanold sat in his car in his driveway in Modena, New York, Defendants "sped up to his home."  Id. at ¶ 26.  The Defendants exited their vehicle, "entered the property without a warrant, permission, or exigent circumstances, and told Mr. Hanold he was being arrested."  Id.  They handcuffed Hanold, placed him in the back of their vehicle and drove away "at speeds exceeding 70 miles an hour."  Id. at ¶ 27.

During this drive, Defendants allegedly told Hanold that if Seidman had not said he was a lawyer, "the whole thing would have been over."  Id. at ¶ 28.  They also allegedly told Hanold that if he–unlike Seidman–cooperated, the Troopers "would try to get him processed and released faster."  Id.

At around 7:00 a.m. on January 24, 2016, Defendants arrived at the home that Seidman shares with his grandmother in New Paltz.  Id. at ¶ 29.  Plaintiffs allege that Seidman's grandmother became "hysterical" at their arrival, shouting to Seidman that officers were at the front door.  Id.  The defendants entered the home as Seidman was coming down the stairs.  Id.  They did so "without permission, a warrant, or exigent circumstances."  Id.  Defendants informed Seidman he was under arrest "because the marijuana he had given to the officers earlier that morning tested positive as hashish."  Id.

Plaintiffs allege that Defendants lied about the results of the test.  Id. a ¶ 30.  Plaintiffs contend that "defendants had identified" the substance "as marijuana and had issued both plaintiffs appearance tickets for possession of the marijuana."  Id.  Defendants also knew that the test they used to identify such a substance "only tests for the presence of tetrahydrocannabinol ("TCH"), which both marijuana and hashish contain, and does not differentiate between hashish and marijuana."  Id.

3

Seidman told the Defendants that the substance was not hashish and implored them to find another "way to take care of the situation." Id. at ¶ 31. The Defendants, however, informed Seidman that possessing hashish is a misdemeanor and not a violation. Id. at ¶ 32. They would have to arrest him and take him to the station. Id. One of the Defendants followed Plaintiff to his bedroom as he dressed. Id. at ¶ 33. The Defendants then took Seidman out of the house. Id. at ¶ 34. They then handcuffed him behind his back on North Manheim Boulevard, in full view of his grandmother and their neighbors.

Defendants brought both Plaintiffs to the State Trooper Station in Highland, New York. Id. at ¶ 35. Hanold left that station after processing at around 8:00 a.m. Id. at ¶ 36. Seidman alleges his experience was different. Id. at ¶ 37. Defendants "screamed at, insulted, and threatened" Seidman. Id. They told him, "among other things, that he was going to jail," called "him a criminal and other names" and "[made] fun of him for living with his grandmother." Id.

Plaintiff alleges that Defendants lied to the Ulster County District Attorney's Office, telling the Office "that Mr. Seidman had violated New York Penal Law § 220.03." Id. at ¶ 38. "Based on these allegations," the District Attorney's Office "forwarded to Defendant Joseph Colby a Criminal Court Complaint." Id. at ¶ 39. Defendant Joseph Colby reviewed and signed that criminal complaint. Id. at ¶ 40. He knew at that time that the allegations in the complaint were false. Id. at ¶ 41. Colby then forwarded the complaint to the District Attorney's Office. Id. at ¶ 42. As a result, legal process issued against Plaintiffs. Id. at ¶ 43.

Officers transported Seidman to the New Palz Town Court, where he was

4

arraigned.  Id. at ¶ 44.  Plaintiffs allege that the Honorable Jonathan Katz "refused to leave Mr. Seidman in custody."  Id. at ¶ 45.  Katz directed the Defendants to take Seidman back to the police station and release him.  Id.  Katz directed that Seidman be released on his own recognizance.  Id.  That release came at around 10:00 a.m.  Id.  The terms of Seidman's release required him to return to court to answer the charges.  Id. at ¶ 46.

Plaintiff alleges that Defendants forwarded "false evidence to the Ulster County District Attorney's Office," including "arrest reports, complaint reports, evidence vouchers, test results, and property reports" to the District Attorney's Office as part of the pending criminal proceeding.  Id. at ¶ 47.

Plaintiffs further allege that on March 1, 2016, a State Trooper pulled over Seidman as he was driving with a friend.  Id. at ¶ 48.  That Trooper is not a party to this action.  Id.  The Trooper claimed to smell marijuana and demanded that Seidman and his friend exit the vehicle.  Id. at ¶ 49.  A search of Seidman and the vehicle did not reveal any contraband.  Id. at ¶ 50.  Plaintiff alleges that the Trooper who stopped him told Seidman that he had been at the police station on the day of Seidman's arrest and knew who he was.  Id. at ¶ 51.  Plaintiff contends that this Trooper told him "that if he ever found out that Mr. Seidman gave troopers a hard time or disrespected them, he would hit Mr. Seidman with every charge he could think of."  Id. at ¶ 51.

Plaintiffs contend that Judge Katz dismissed the charge of criminal possession of a controlled substance in the seventh degree on February 17, 2016.  Id. at ¶ 53.  Plaintiff alleges, "upon information and belief," that the dismissal came "on the merits and in favor of Mr. Seidman."  Id.  Plaintiffs also assert that "[u]pon information and belief," Judge Katz "stated that the charge was 'ridiculous' and dismissed it."  Id.  Plaintiffs also admit that

5

"Seidman was granted an adjournment in contemplation of dismissal on the charge of unlawful possession of marijuana." Id. at ¶ 54. "All charges," they claim, "were terminated in favor of Mr. Hanold on February 17, 2016." Id. at ¶ 55.

Plaintiffs' Amended Complaint contains seven causes of action. Count One alleges an unlawful stop in violation of the Fourth and Fourteenth Amendments. Count Two alleges unlawful entry of Seidman's curtilage and home and Hanold's curtilage in violation of the Fourth Amendment. Count Three alleges false arrest of both Plaintiffs. Count Four alleges that Defendants violated Plaintiffs' due process rights by forwarding false evidence to the District Attorney's Office. Count Five alleges malicious prosecution. Count Six alleges conspiracy. Count Seven alleges a failure to intervene by "[t]hose defendants" who "were present but did not actively participate in the aforementioned unlawful conduct[.]" Id. at ¶ 85. Plaintiffs seek compensatory and punitive damages.

After Defendants answered the Amended Complaint, Plaintiffs filed the instant motion. The parties have briefed the issues, bringing the case to its present posture.

## II.   Legal Standard

Plaintiffs filed a motion for judgment on the pleadings. "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2013). In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). This tenet does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

6

suffice." Id. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). When, as here, the Plaintiff proceeds *pro se*, the Court "'construe[s] [the complaint] broadly, and interprets [it] to raise the strongest arguments that [it] suggests.'" Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 146 (2d Cir. 2002) (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)). "This is especially true when dealing with pro se complaints alleging civil rights violations." Id. Plaintiff did not respond to the motion. Since "no response was necessary" to a 12(b)(6) motion to dismiss, the Court will apply the appropriate legal standard and determine whether Plaintiff's Amended Complaint states a claim upon which relief could be granted. Maggette v. Dalsheim, 709 F.2d 800, 802 (2d Cir. 1983).

### III. Analysis

Plaintiffs seek judgment on their false arrest claim as it relates to their second seizure, at their residences. They contend that Defendant Colby's admissions in his answer to the Amended Complaint demonstrate that he lacked probable cause for those arrests.

As the Court explained previously in this matter, "[u]nder New York law, a plaintiff claiming false arrest must show, *inter alia*, that the defendant intentionally confined him without his consent and without justification." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citing Broughton v. State, 37 N.Y.2d 451, 456 (1975)). "A § 1983 claim for false arrest, resting on the Fourth Amendment . . . is substantially the same as a claim for false arrest under New York law." Id. (citations omitted). When an officer makes a warrantless

7

arrest, he has acted "extrajudicially" and the arrest is presumed unlawful. Broughton, 37 N.Y.2d at 458. However, one may rebut this presumption by showing that probable cause existed at the time of arrest. Id. For a false arrest claim, the arrest is not required to be "in any sense formal." Posr v. Doherty, 944 F.2d 91, 96 (2d Cir 1991) (citing People v. Hicks, 500 N.E.2d 861, 864 (N.Y. 1986)).

"Probable cause requires an officer to have 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (quoting Martinez v. Simonetti, 202 F.3d 625,644 (2d Cir. 2000)). "When determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it." Id.

Plaintiffs contend that Defendant Colby admits that probable cause for the second arrests came from the initial arrest. Colby admitted that the initial arrests, which came after a traffic stop, ended with officers issuing Plaintiffs appearance tickets and then releasing them. The second arrests, which came after this release, were for possession of hashish. The hashish at issue allegedly came from the marijuana seized during Plaintiffs' initial arrests. Defendant Colby also allegedly admits that he and his partner could differentiate between the two drugs at the time of the initial arrest. Plaintiffs therefore claim that, if the Defendants knew about the hashish during the initial stop, they had probable cause for that arrest then. They could not later use that probable cause to arrest the Plaintiffs at their homes. Defendants respond that probable cause for the second arrests existed because they only discovered that the seized drugs contained hashish after a close inspection at the station.

8

Plaintiffs contend that an admission from Defendant Colby in answering the Amended Complaint is fatal to any defense he might have on Plaintiffs' false arrest claims regarding their second arrest. These admissions have to do with paragraph 30 of Plaintiffs' Amended Complaint. In that paragraph, Plaintiffs allege that Defendants' claim that the marijuana they recovered during the traffic stop contained hashish was:

> a lie. The individual defendants knew that the substance Mr. Seidman had given them was marijuana, and, in fact, the individual defendants had identified it as marijuana and had issued both plaintiffs appearance tickets for possession of the marijuana. The individual defendants also knew that the test that they used to identify marijuana and hashish only tests for the presence of tetrahydrocannabinol ("THC"), which both marijuana and hashish contain, and does not differentiate between hashish and marijuana.

Amend. Complt. at ¶ 30. Defendants' answer provides:

> As to the allegations contained in ¶ 30 of the F[irst] A[mended] C[omplaint], deny the first sentence; as to the second sentence, the marijuana in possession of the Plaintiffs had contained portions of hashish; as to the third sentence, the Defendants were able to distinguish between what was marijuana and what was hashish; deny the remainder of the allegations in the paragraph.

Defendants' Answer to the Amended Complaint, dkt. # 24, at ¶ 17. Plaintiffs contend that the admissions in this paragraph entitle them to judgment on the pleadings because the admissions demonstrate that no probable cause for the arrests existed: "[t]he sole probable cause for" Plaintiffs' arrests "was the alleged hashish obtained and readily recognizable to Defendant Colby during the initial stop and search. Once Plaintiffs had been released, Defendant Colby could not predicate their second seizure on the probable cause acquired during the first seizure."

Even if the Court could accept the Plaintiffs' rather dubious reading of the case law

9

they cite,[2] the Court would still deny their motion on this basis. Plaintiffs' theory is that Defendants had probable cause to arrest them for possession of hashish during the initial stop. Arresting them for that crime at their homes, they insist, violated their Fourth Amendment rights because no new basis for probable cause appeared between the initial stop and the later arrests. Making all inferences in the non-moving parties' favor, as the Court must in this instance, causes the Court to conclude that no factual basis exists that requires the Court to accept the Plaintiffs' reading of this matter. The allegation and answer above does not indicate that Defendants knew that the substance Seidman possessed when Defendants first arrested Plaintiffs contained hashish. An equally, perhaps more, plausible reading of the allegation and answer would be that the test cited by the Plaintiffs to distinguish between marijuana and hashish is not necessary. A visual

---

[2] Plaintiffs cite, for example, Rodriguez v. United States, 135 S.Ct. 1609 (2015), for the proposition that "[a]n officer cannot use probable cause from an earlier seizure to provide probable cause for a subsequent seizure as any authority to seize a person in connection with any violation of the law ends when the first seizure concludes." Rodriguez stated no such sweeping rule for search-and-seizure law. In Rodriguez, the Supreme Court addressed the question of "whether the Fourth Amendment tolerates a dog sniff conducted after completion of a traffic stop." Id. at 1612. In Rodriguez, a police officer stopped a car for driving on the shoulder. Id. The officer obtained identifying information from the driver and returned to his car. Id. at 1613. The officer ran a records check, returned again to the defendant's car, and obtained the passenger's driver's license. Id. The officer returned to his car and ran a records check on the passenger while he called for a second officer and wrote out a warning ticket for the driver. Id. He then returned to the car for a third time and returned all the documents and issued the ticket. Id. The reasons for the initial stop were over. Id. Despite this, the officer continued to detain the driver, and eventually used a dog to examine the car. Id. Defendant moved to suppress the drugs the dog found. Id. The Court concluded that "[a] seizure justified only by a police-observed traffic violation . . . 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete the mission' of issuing a ticket for the violation." Id. at 1612 (quoting Illinois v. Caballes, 543 U.S. 405, 407 (2005)). Rodriguez does not stand for the rule of law Plaintiffs claim it does, and the facts of the two cases are too dissimilar to compare them anyway.

inspection in the light of the stationhouse revealed to Defendants that the substance Seidman claimed contained marijuana also contained hashish. On the facts as alleged in the pleadings, therefore, the Court will deny the Plaintiffs' motion.[3]

## IV. CONCLUSION

For the reasons stated above, the Court will **DENY** the Plaintiffs' motion for judgment on the pleadings, dkt. # 25. The Court will also **DENY AS MOOT** the Defendants' motion for reconsideration of the Court's decision denying in part and granting in part Defendants' motion to dismiss the initial Complaint, dkt. # 19.

**IT IS SO ORDERED.**

*/s/ Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge

**DATED:** February 24, 2020

---

[3]The parties also argue about whether arguable probable cause existed under the circumstances, and thus whether qualified immunity applies. No motion to dismiss on that basis is presently before the Court, and the Court will not address the issue. Defendants may raise that issue at an appropriate point in the ongoing proceedings.

11