**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOSHUA SEIDMAN and CHRISTOPHER HANOLD,**

               **Plaintiffs,**

     v.                                                                           No. 1:18-cv-202

                                                                      (TJM/CFH)

**STATE TROOPER JOSEPH COLBY and STATE**
**TROOPER JOHN DOE,**

               **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

Before the Court is the Defendants' partial motion for summary judgment. See dkt. # 51. The parties have briefed the issues, and the Court has determined to decide the matter without oral argument.

**I.   Background**

This case concerns the arrests of Plaintiffs Joshua Seidman and Christopher Hanold after a traffic stop on January 24, 2016. They allege that aspects of the stop and their subsequent arrests and prosecutions violated their constitutional rights. They raise their claims pursuant to 42 U.S.C. § 1983 against the two New York State Troopers who arrested

them, Defendants Joseph Colby and David Dworkin.[1]

The incident in question began in the early morning hours of January 24, 2016. Defendants' Statement of Material Facts ("Defendants' Statement"), dkt. #51-1, at ¶ 1.[2] On that date, Troopers Dworkin and Colby observed Plaintiff Hanold driving a vehicle. Id. Plaintiff Seidman was a passenger in that vehicle. Id. The Troopers pulled over Hanold's car. Id. at ¶ 2. Colby and Dworkin smelled marijuana coming from the vehicle and ordered the Plaitniffs out of the car. Id. at ¶ 3. After he stepped from the car, Plaintiff Seidman handed Colby and Dworin marijuana and a pipe that he had on his person. Id. at ¶ 4. The Troopers issued Plaintiffs appearance tickets for unlawful possession of marijuana and released them. Id. at ¶ 5.

When Troopers Colby and Dworkin returned to their barracks in Highland, New York, they examined the marijuana they had seized during the traffic stop. Id. at ¶ 6. Plaintiffs deny this statement, pointing to the appearance tickets they received and their deposition testimony, though none of these records offer any evidence about what Colby and Dworkin did when they returned to their barracks, other than the tickets they issued.[3] See Plaintiffs'

---

[1]Plaintiffs named Dworkin as "John Doe" in the case caption.

[2]Both sides filed statements with material facts with citations to the record as required by the local rules. The Court will cite to the Defendants' statement for facts which are uncontested and to both parties' statements where disputes exist.

[3]The Court would find these denials more helpful if Plaintiffs explained how the evidence they point to creates a question of fact. As stated, the denials simply cite to the portions of the record that Plaintiffs claim creates a question of fact. While these citations technically comply with the rule and the Court will consider the evidence, the purpose of the rule is to inform the Court of the nature of the dispute. As presented by the Plaintiffs, these denials point the court to portions of a deposition or another part of the record and invite the Court to ferret out the nature and basis for the disputed facts. The Plaintiffs also
(continued...)

Response to Defendants' Statement of Material Facts ("Plaintiffs' Response"), dkt. # 52, at ¶ 6. For example, Dworkin and Colby had alleged that they found marijuana in the trunk of the car. A portion of Seidman's deposition testimony cited by the Plaintiffs contains a claim that the evidence in question was "fabricated." See Deposition of Joshua Seidman ("Seidman Dep."), dkt. # 51-3, at 21. Seidman alleges that, after a dispute during the traffic stop, Colby and Dworkin decided to create a pretext for arresting Hanold and Seidman:

> they needed a pretext to come yank us out of our homes when they retaliated against us maliciously, because when the spectacle was over I told them this entire search was inappropriate and that they had taken it too far and that I was going to speak to their commanding officers about it. So they went back to their commanding officers and, you know, decided to fabricate this excuse to come torture us one more time over half a gram of marijuana.

Id. Defendants contend that their examination of the drugs seized when they returned to barracks revealed that that material contained "a small amount of hashish mixed up with the marijuana that had been seized from the Plaintiffs." Defendants' Statement at ¶ 7. During his deposition, Seidman denied that Troopers recovered any such material: "[t]here was no hashish. I know nothing about any hashish. In fact, they didn't either because they somehow–somehow they came up with that after the fact." Seidman Dep. at 22. Hanold testified at his deposition that the Troopers did not tell him that they had found any additional drugs in his car during the search. Deposition of Christopher Hanold ("Hanold Dep."), dkt. 3 54-1, at 15. He also saw Troopers search the trunk of his car. Id. at 16.

Defendants contend that, after discovering hashish in the marijuana, they "had newly

---

[3](...continued)
include in their response additional statements of material fact with citations to the record. The Defendants offer no response to these statements. The Local Rules do not require a response. The Court takes notice of Plaintiffs' additional statements and citations and will utilize them in addressing the issues raised by Defendants' motion.

3

established probable cause to arrest Plaintiffs for criminal possession of hashish." Defendants' Statement at ¶ 8. They allege that this conduct violated New York Penal Law § 220.03, a misdemeanor. Id. Plaintiffs again deny this statement, pointing to their depositions and the appearance tickets they received. Plaintiffs' Response, at ¶ 8. As explained above, Seidman contended that he had not possessed any hashish. He later testified that, upon his arrest, Troopers told him that "we took your bowl back to the precinct. We field tested it. Field tested, whatever that means and we found–we found hash residue in your bowl." Seidman Dep. at 28.[4] At his deposition, after contended that he never saw Troopers searching the car, Hanold testified that Dworkin, upon taking him into custody, told him that "they field tested the bowl and discovered it had–it tested positive for hash." Hanold Dep. at 26.

Defendants allege that, once they had the information about the presence of hashish, Dworkin and Colby "immediately drove to the residence of the driver," Hanold. Defendants' Statement at ¶ 9. Once there, they "promptly located Plaintiff Hanold in his driveway and arrested him for possession of hashish." Id. Plaintiffs admit that Colby and

---

[4]Seidman further testified that, after being informed of the allegations about hashish:

> I was pretty quiet because I realized that we were now–this had become a nightmare more than already. And I realized they–you know, they had made their point. We were completely powerless and we were at, you know, their mercy. So I waited till we got [to] the precinct because I wanted to speak to their supervisor . . . And then, oh by the way, then they made fun of me more. They're like what kind of lawyer lives with his grandma. And–and I asked them. I said you guys think–how would you guys feel if somebody dragged you out of your grandmother's house over half a gram of marijuana. Well, our family doesn't do marijuana. We're not scumbags like you.

Seidman Dep. at 29.

4

Dworkin arrived at Hanold's home and arrested him, but point out that the Troopers' entry on the property was "without a warrant, permission, or exigent circumstances." Plaintiffs' Response at ¶ 9. They point to deposition testimony from Hanold that indicates that, when Troopers arrived he had been seated in his car for only "minutes." Hanold Dep. at 24. The car was parked at "up front of my driveway, less than five feet from the steps to my front door." Id. at 25. Hanold also provides an affidavit that describes the layout of his driveway and where he parked his car. See Affidavit of Christopher Hanold ("Hanold Affdvt.") dkt. # 53.

Defendants contend that "Plaintiff Seidman eventually took an ACOD[5] plea in the criminal matter that is at the heart of this civil lawsuit." Defendants' Statement at ¶ 10. Plaintiff responds by pointing to certificate of disposition in his case, which indicates that both charges against him were dismissed. Plaintiffs' Response at ¶ 10; Certificate of Disposition for Joshua Seidman, dkt. # 54-11. Among the additional facts he alleges are that "Seidman accepted an adjournment in contemplation of dismissal on the charge of N.Y. Penal L. § 221.05." Plaintiffs' Response at ¶ 58.

After service of the Complaint Defendants filed a motion to dismiss. The Court granted that motion in part and denied it in part, permitting Plaintiffs to file an Amended Complaint. Defendants answered that Amended Complaint. The parties then engaged in discovery. At the close of discovery, Defendants filed the instant motion. The parties then briefed the issues, bringing the case to its present posture.

**II.   Legal Standard**

---

[5]Adjournment in Contemplation of Dismissal

5

Defendants seek summary judgment. It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

**III.   Analysis**

Defendants seek dismissal of a number of the counts in the Amended Complaint, which the Court will address in turn.

### A. Count 2: Plaintiff Hanold

Defendants seek judgment on Count 2 as alleged by Plaintiff Hanold. In that Count, Plaintiff alleges that "entrance into . . . Mr. Hanold's curtilage was in violation of the Fourth Amendment." Amended Complaint ("Amnd. Complt."), dkt. # 21, at ¶ 62. Defendants contend that their approach to Hanold's vehicle, parked in his driveway, did not amount to an illegal entry and did not violate Hanold's Fourth Amendment rights. Plaintiffs respond that a question of fact exists as to whether the driveway where Hanold had parked his vehicle was part of the home's curtilage, and thus entitled to Fourth Amendment protection.

Defendants contend that an arrest in a person's driveway cannot violate the Fourth Amendment. As a general matter "'driveways that are readily accessible to visitors are not entitled to the same degree of Fourth Amendment protection as are the interiors of defendants' houses.'" United States v. Reyes, 283 F.3d 446, 465 (2d Cir. 2002) (quoting United States v. Reilly, 76 F.3d 1271, 1279 (2d Cir. 1996)). Courts have therefore concluded that "a law enforcement officer's presence on an individual's driveway when that officer was in pursuit of legitimate law enforcement business" does not violate the Fourth Amendment. Id. Moreover, "a police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.'" United States v. Allen, 813 F.3d 76, 84 (2d Cir. 2016) (quoting Kentucky v. King, 563 U.S. 452, 469 (2011)).

Plaintiffs do not dispute that Hanold's arrest occurred in the driveway of his home. They contend, however, that the issue here is whether Defendants violated Hanold's Fourth Amendment rights by intruding on the privacy to which he was entitled at his home by approaching his car parked in the driveway near the house. "At the 'very core' of the Fourth

7

Amendment 'stands the right of a man to retreat into his home and be free from unreasonable government intrusion.'" United States v. Alexander, 888 F.3d 628, 631 (2d Cir. 2018) (quoting Silverman v. United States, 365 U.S. 505, 511 (1961)). "The curtilage–that is, the area adjacent to the home and to which the activity of home life extends–is considered part of a person's home and enjoys the same protection against unreasonable searches as the home itself." Id. (internal quotation omitted). Thus, a search of the curtilage not authorized by a warrant or some exception to the warrant requirement violates the Fourth Amendment. Id. At the same time, the Fourth Amendment does not apply to "that portion of private property that extends outside a home's curtilage–what the caselaw terms an 'open field.'" Id. (quoting Florida v. Jardines, 569 U.S. 1, 6 (2013)).

In other words, Plaintiffs contend that the arrest would be illegal if it occurred in the curtilage, and that whether the parked car stood in the curtilage is a question of fact. They provide an affidavit from Hanold that describes the status of the part of the driveway where the arrest occurred. See dkt. # 53. He reports that the driveway is around 110 feet long and leads from the road to his home. Id. at ¶ 3. Most of the driveway is 1 ½ car widths wide, but the driveway expands to 3 ½ car widths for the last 25 feet before the driveway reaches the house. Id. at ¶ 4. That wider part of the driveway "abuts the car garage and is right next to the steps that lead to the front door." Id. at ¶ 5. The home's residents use the wider part of the driveway for a variety of purposes besides parking cars. Id. at ¶ 6. Before a snow plow knocked it over in early 2021, the family played basketball in that part of the driveway. Id. The family would also hold "gatherings and parties" in that part of the driveway, opening the garage door to expand space. Id. at ¶ 7. The family puts a grill in the widened area and cooks meals there. Id. at ¶ 8. Hanold parked his vehicle in the wider

8

part of the driveway on January 24, 2016. Id. at ¶ 11.

Plaintiffs argue that this evidence supports their claim that the arrest occurred in the home's curtilage and violated Hanold's Fourth Amendment rights. They point to cases that describe the rules regarding the connection of the curtilage to the privacy a homeowner expects. See, e.g., Jardines, 569 U.S. at 6 ("We . . . regard the area 'immediately surrounding and associated with the home'–what our cases call the curtilage–as 'part of the home itself for Fourth Amendment purposes.'") (quoting Oliver v. United States, 466 U.S. 170, 180 (1984); Alexander, 888 F.3d at 631). Those cases, however, address the legality of searches in the curtilage. They provide a basis for determining which parts of the property make up the curtilage, and which parts are an "open field," where warrantless searches are permissible. See Alexander, 888 F.3d at 632 (determining the curtilage by applying the factors articulated in United States v. Dunn, 480 U.S. 294, 297 (1987): "'the proximity of the area claimed to be the curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.'").

The issue on this count, however, is not whether Defendants engaged in an illegal search, but whether they violated the Fourth Amendment when they arrested Hanold in his driveway. "[T]he Fourth Amendment . . 'does not proscribe all searches and seizures, but only those that are unreasonable.'" Jones v. Cty. of Suffolk, 936 F.3d 108, 114 (2d Cir. 2019) (quoting Skinner v. Ry. Labor Execs. Ass'n, 489 U.S. 602, 619 (1989)). Still, courts are clear that, "in the absence of exigent circumstances, the Amendment prohibits law enforcement officials from making a warrantless and nonconsensual entry into a suspect's

9

home to arrest him." United States v. Allen, 813 F.33d 76, 77 (2d Cir. 2016) (citing Payton v. New York, 445 U.S. 573 (1980)).  In the Second Circuit's analysis, the Fourth Amendment's protections against unlawful seizure in the home "are primarily triggered by the *arrested* person's location and do not depend on the location or conduct of the arresting officers."  Id.  "[W]hen officers approach the door of a residence, announce their presence, and place the occupant under arrest when he or she, remaining inside the premises, opens the door in response to the police request, the arrest occurs inside the home, and therefore requires a warrant."  Id. at 85.  The Second Circuit Court of Appeals has recognized that a distinction may exist between the legality of searches and seizures when it comes to the curtilage, but has not resolved that issue.  See Jones v. Suffolk, 936 F.3d 108, 119 n.15 (2d Cir. 2019).  The question of whether a person arrested in the curtilage has a Fourth Amendment claim has not yet been answered in this Circuit.

The Court notes that a question of fact probably exists as to whether Hanold's arrest occurred in the home's curtilage or in an area where the police could reasonably enter without violating the sanctity of the home.  In that sense, the Court finds that summary judgment is not appropriate on this claim and will deny the motion on that basis.

While a question of fact may exist as to whether the part of the driveway where Hanold parked was part of the curtilage and he was entitled to some sort of Fourth Amendment protection, the legal question of what sort of protection is available for a seizure under those circumstances also exists.  The law is not settled in that area. Under those circumstances, the Court concludes that there may be a basis for qualified immunity for the Defendants' seizure of Hanold.  "Qualified immunity is an affirmative defense that shields

government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Stephenson v. Doe, 332 F.3d 68, 76 (2d Cir. 2003) (quoting McCardle v. Haddad, 131 F.3d 43, 50 (2d Cir. 1997)). Qualified immunity also applies when "'it was 'objectively reasonable' for [the officer] to believe that [his or her] actions were lawful at the time of the challenged act.'" Betts v. Shearman, 751 F.3d 78, 83 (2d Cir. 2014) (quoting Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007)).

Defendants pled the affirmative defense of qualified immunity. See Answer, dkt. # 24, at Affirmative Defenses, ¶ 2. Defendants have not raised that defense in seeking summary judgment, however. Courts in this circuit have *sua sponte* granted summary judgment on the basis of qualified immunity, particularly in prisoner civil rights cases. See, e.g., Doyle v. Coombe, 976 F.Supp. 183, 187 (W.D.N.Y. 1997). At the same time, "[t]he qualified immunity defense can be waived, either by failure to raise it in a timely fashion or by failure to raise it with sufficient particularity." McCardle, 131 F.3d at 53 (internal citations omitted)). Since "qualified immunity is an affirmative defense, it is incumbent upon the defendant to plead, and adequately develop, a qualified immunity defense during pretrial proceedings so that the trial court can determine which claims, if any, may be disposed of by summary judgment, or, at least, which facts material to the qualified immunity defense must be presented to the jury to determine its applicability once a case has gone to trial." Blissett v. Coughlin, 66 F.3d 531, 538 (2d Cir. 1995).

At the same time, "as qualified immunity was meant to shield public officials from the burden of participating in a lawsuit, the issue should be decided at the earliest opportunity, preferably before discovery." Garcia v. Brown, 442 F.Supp.2d 132, 143 (S.D.N.Y. 2006)

11

(citing Saucier v. Katz, 533 U.S. 194 (2001)).  The Court finds that the issue of qualified immunity may be dispositive on this issue and that evidence sufficient to decide the issue has likely been collected already.  Mindful of the directive to resolve that issue without needless additional litigation, the Court would prefer to address the issue before trial.  The Plaintiffs, however, have not had an opportunity to present any arguments opposing such a ruling.  Therefore, the Court will direct the parties to brief the issue of whether qualified immunity applies to Hanold's Fourth Amendment claim.  The Court's order will set a schedule for such briefing.

### B.     False Arrest Claim by Seidman–Marijuana Possession

Defendants next argue that they entitled to summary judgment on that portion of Seidman's false arrest claim that involves marijuana possession. They argue that they had probable cause for the arrest, and under those circumstances no false arrest claim can lie. Seidman agrees that probable cause existed to arrest him for marijuana possession, and that any false arrest claim for that arrest should be dismissed.

"Probable cause is a complete defense to a constitutional claim of false arrest[.]" Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014).  "'Probable cause exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" Id. (quoting Williams v. Town of Greenburgh, 535 F.3d 71, 79 (2d Cir. 2008)).  Here, the undisputed facts related above indicate that, upon encountering the Troopers, Seidman admitted to possessing marijuana, the offense for which the Defendants charged him.  Probable cause existed for that arrest, as Plaintiffs admit.  The Court will grant the motion with respect to this claim.

### C. Malicious Prosecution

Defendants next seek dismissal of the fifth claim in Plaintiffs' Amended Complaint, which alleges malicious prosecution. That claim alleges that Defendants brought legal proceedings against Seidman under New York Penal Law § 220.03. Amend. Complt. at ¶ 73. Plaintiffs further allege that "[t]he individual defendants lacked probable cause to commence the criminal proceedings alleging a violation of" that statute, Defendants' actions, they claim, were motivated by "actual malice," and the criminal proceedings terminated in Seidman's favor. Id. at ¶ 74.

In New York, malicious prosecution has "four elements[.]" DiBlasio v. City of New York, 102 F.3d 654, 657 (2d Cir. 1996). They are: "(1) commencement or continuance of a criminal proceeding; (2) lack of probable cause; (3) existence of malice, and (4) termination in plaintiff's favor." Id. "Malicious prosecution suits require, as an element of the offense, 'the termination of the proceeding in favor of the accused.'" Poventud v. City of New York, 750 F.3d 121, 130 (2d Cir. 2014) (quoting Smith-Hunter v. Harvey, 95 N.Y.2d 191, 195, 734 N.E. 2d 750, 373 N.Y.S. 2d 87 (2000)). "'Under the common law any final termination of a criminal proceeding in favor of the accused, such that the proceeding cannot be brought again, qualifies as a favorable termination for purposes of a malicious prosecution action.'" Id. at 130-31 (quoting Smith-Hunter, 95 N.Y.2d at 195). A termination is not favorable in this sense, however, "'if the charge is withdrawn or the prosecution abandoned pursuant to a compromise with the accused.'" Id. at 131.

Defendants argue that Plaintiff Seidman cannot prevail on a malicious prosecution claim because he took an ACOD plea in the criminal matter, which is not a termination of the proceeding in his favor. Defendants also contend that Plaintiff's claim must fail because

13

he admitted in his Amended Complaint that the Defendants had probable cause to arrest him. Plaintiffs respond that evidence supports Seidman's malicious prosecution claim for the specific charge alleged in the Amended Complaint, which involved the possession of hashish. They allege that Defendants "fabricated" the evidence supporting that charge, which alleged that Seidman possessed marijuana and hashish found in the vehicle. Seidman did not take an ACOD plea on that charge, and evidence indicates that Defendants lacked probable cause and acted out of malice.

The evidence before the Court indicates that Seidman faced two separate charges after his encounter with Troopers on January 24, 2016. Colby filed a criminal information on that date that alleged that "[o]n the aforementioned time, date, and place being State Route 299, Town of New Paltz, State of New York; the defendant did possess a clear plastic bag containing approximately one gram of marijuana and on[e] glass marijuana pipe" in violation of New York Penal Law § 221.05. See dkt. # 54-7. Colby filed a second information on that date that alleged a violation of New York Penal Law § 220.03, criminal possession of a controlled substance, a misdemeanor. See dkt. # 54-8. That charge alleged that Seidman possessed a controlled substance at the same location as the marijuana charge. Id. Colby alleged that Seidman "possess[ed] a plastic container containing approximately less than one gram of a brown substance. Said substance was field tested and yielded a postive result for the presence of tetrahydrocannabinol (THC) hasish. Furthermore, based on field testing, training and experience said substance was identified as hasish, a schedule 1 controlled substance." Id. The certificate of disposition for Seidman's charges indicates that the court dismissed the marijuana possession charge pursuant to CPL 170.56, but did not rely on that statute in dismissing the controlled substance charge. See dkt. # 54-11.

14

Section 170.56 addresses adjournments in contemplation of dismissal. That statute permits defendants charged with certain marijuana-related offenses to participate in an alternate method of resolving the matter. NY CPL § 170.56(1). Under that statute, "before the entry of a plea of guilty thereto or commencement of a trial thereof, the court upon motion of a defendant, may order that all proceedings be suspended and the action adjourned in contemplation of dismissal[.]" Id. A court that grants such dismissal "must set and specify such conditions for the adjournment as may be appropriate, and such conditions may include placing the defendant under the supervision of any public or private entity." NY CPL § 170.56(2). Defendants who abide by the conditions the court sets can have the charges against them dismissed. NY CPL § 170.56(3)-(4). Courts have concluded that cases dismissed pursuant to this procedure are not the sorts of favorable terminations that permit an accused to bring a malicious prosecution claim. "An adjournment in contemplation of dismissal . . . involves the consent of both the prosecution and the accused and leaves open the question of the accused's guilt." Singleton v. New York, 632 F.2d 185, 193 (2d Cir. 1980); see also, Shain v. Ellison, 273 F.3d 56, 68 (2d Cir. 2001) ("adjournment in contemplation of dismissal is not considered to be a favorable termination"); Fulton v. Robinson, 289 F.3d 188, 196 (2d Cir. 2002) (ACOD "is not a favorable termination because it leaves open the question of the accused's guilt and allows the state to pursue the criminal prosecution in the interests of justice during the conditional period.") (internal citations omitted)).

If Plaintiff Seidman's claim for malicious prosecution were based on his marijuana charge, the Court would grant the Defendant's motion on this basis. The Court would also grant the motion because probable cause existed for the marijuana arrest. As explained

15

above, Seidman admitted to the Defendants that he possessed the marijuana in question. Seidman's malicious prosecution claim arises, however, from the other charge he faced, for criminal possession of a controlled substance. Plaintiffs contend that the dismissal of this charge, which the record indicates was not an adjournment in contemplation of dismissal, was a favorable termination. Defendants did not file a reply to this argument, and they did not address that charge in their initial motion. The Court must therefore conclude that they do not argue that the favorable termination rule bars a claim based on that charge.

The malicious prosecution claim arises from the other charge, which the record shows the Court dismissed. Defendants contend that probable cause existed for the arrest, but point only to Seidman's admission that he possessed marijuana. As explained above, Seidman disputes claims that he actually possessed the drugs charged in the misdemeanor count. He alleges that the Defendants "fabricated" the presence of hasish as pretext for charging him with a more serious count than marijuana possession. Doing so, he claims, permitted them to take him into custody. He further implies that the judge in his criminal case recognized that no basis for the charge existed and dismissed it. He also contends that the Troopers became antagonistic towards him during the stop and that such antipathy continued and led them to create charges that lacked probable cause.

The Court finds that the record before the Court does enough to create a question of fact on this particular malicious prosecution charge. The Court has been presented only with the Plaintiffs' claims about the cause of dismissal in the criminal case and a jury believing Plaintiffs' claims about the trial judge's response to the charges could find a lack of probable cause and a favorable termination. Likewise, Plaintiffs claim that no search of the trunk occurred, and Seidman claims he did not have any hashish. A reasonable juror could

16

believe these claims and thus conclude that the Troopers' claim to have discovered hashish was a false one and thus lacked probable cause. A reasonable juror could also find, based on Seidman's description of his interactions with the Defendants, that the Troopers acted because of a conflict they had with Seidman during the traffic stop. The evidence before the Court on that particular charge amounts to conflicting claims in their depositions about the events at the stop, the materials Troopers discovered during the stop, and the basis for the arrest. Under those circumstances, a jury must determine the facts. The motion will be denied in this respect.

### D. Conspiracy Claim

Defendants next argue that the Court should dismiss Plaintiffs' sixth cause of action, which alleges a conspiracy to violate their rights and seeks relief pursuant to 42 U.S.C. § 1983. They argue that Plaintiffs cannot prevail because they cannot prove any constitutional injury and because the "intra-agency conspiracy" doctrine bars such claims. Plaintiffs claim that the conspiracy claims survive because Defendants acted out of "personal retaliation." The evidence, Plaintiffs claim, establishes that Defendants arrested the Plaintiffs because of the conflict they had with Seidman. They acted out of a personal animus to retaliate for statements that Seidman made during the initial stop.

Courts in this district have concluded that the intra-agency conspiracy doctrine. "which provides that employees or agents of a single corporate entity, acting within the scope of their employment, are legally incapable of conspiring together" applies to Section 1983 claims. Ali v. Connick, 136 F.Supp.3d 270, 282 (E.D.N.Y. 2015) (citing Nassau Cty. Emp. "L" v. County of Nassau, 345 F.Supp.2d 293, 304 (E.D.N.Y. 2004); Rahman v. Fischer, No. 10-CV-1496 (LEK)(TWD), 2012 U.S. Dist. LEXIS 140455, 2012 WL 4492010,

17

at *13 (N.D.N.Y. Sept. 28, 2012)). The conspiracy alleged here occurred between officers in the same agency, and the doctrine would seem to bar the claim. As Plaintiffs point out, however, exceptions to the doctrine exist. One such exception is the "personal stake exception," which "does not apply the bar to conspiracy claims against 'individuals within a single entity when they are pursing personal interests wholly separate and apart from the entity.'" Id. (quoting Bond v. Bd. of Educ. of the City of N.Y., No. 97-CV-1337, 1999 U.S. Dist. LEXIS 3164, 1999 WL 141702, at *2 (E.D.N.Y. Mar. 17, 1999)). The intra-corporate conspiracy doctrine does not apply when "law enforcement allegedly exercises official duties in unconstitutional ways in order to secure personal benefit." Alzavez v. City of New York, No. 2012 U.S. Dist. LEXIS 176840, *9 (S.D.N.Y. Dec. 12, 2012). For the exception to apply, a plaintiff must show that the defendant "acted in his own personal interest, not in the interest of the police depart or the city, by conspiring with others" to engage in the unconstitutional activity. Hill v. City of New York, No. 03cv1283, 2005 WL 3591719 (E.D.N.Y. Dec. 30, 2005). To meet this standard, "more is required of a plaintiff than simply alleging that the defendants were motivated by personal bias against the plaintiff." Medina v. Hunt, No. 9:05cv1460, 2008 WL 4426748 (N.D.N.Y. Sept. 25, 2008) (ordering adopting Report-Recommendation).

Plaintiffs argue that they can put forth facts that jurors could use to conclude that Defendants "acted to exact retaliation that was personal, rather than official, in nature." They point to the conflict that the Troopers and Seidman had over Seidman's representation that he was a lawyer who could explain the law to the Troopers. They cite Seidman's allegations that the Troopers mocked him during the traffic stop and when they later arrested him, making specific reference to his status as an attorney.

18

The Court finds that this evidence is insufficient for the personal stake exception to apply to this incident and permit the conspiracy claim to go forward. The conduct about which Plaintiffs complain–their arrest–certainly was conduct in furtherance of the objectives of the New York State Police. No evidence exists to indicate that Defendants' arrest of the Plaintiffs served some personal interest, such as covering up misconduct, or provided the Troopers a benefit such as a performance bonus or other recognition. No evidence indicates that Defendants acted in retaliation for Seidman or Hanold bringing some sort of complaint against them. Instead, evidence exists by which a jury could determine that the arrest grew less out of illegal actions by the Plaintiffs and more from a personal conflict between the Troopers and Seidman. They appear to have found him too antagonistic and too willing to express disagreement with their tactics and understanding of the law. That personal animus towards Seidman, however, does not constitute conduct a jury could use to find an exception to the intra-corporate conspiracy doctrine. The Court will grant the motion in this respect.

## IV.   CONCLUSION

For the reasons stated above, the Defendants' motion for partial summary judgment, dkt. # 51, is hereby GRANTED in part and DENIED in part. The motion is GRANTED with respect to Plaintiff Seidman's false arrest claim related to his marijuana possession charge and Plaintiffs' conspiracy claim and DENIED in all other respects. The parties are hereby directed to provide briefing on the issue of whether qualified immunity applies to Plaintiff Hanold's Fourth Amendment unlawful seizure claim within fourteen days of the date of this order. Briefs shall not exceed five pages.

**IT IS SO ORDERED.**

Dated: November 30, 2021

Thomas J. McAvoy
Senior, U.S. District Judge