**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOSHUA SEIDMAN and CHRISTOPHER HANOLD,**

           **Plaintiffs,**

    v.                                                                                            No. 1:18-cv-202

                                                                                  (TJM/CFH)

**STATE TROOPER JOSEPH COLBY and STATE**
**TROOPER JOHN DOE,**

           **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

Defendants filed a motion for summary judgment, which the Court granted in part and denied in part. See dkt. #s 51, 59. The Court concluded that, on one issue, Defendant Colby may be entitled to qualified immunity. The parties had not briefed that issue, and the Court directed them to supplement their briefing with reference to whether qualified immunity applied. The parties have supplied that briefing.

**I.     Background**

This case concerns the arrests of Plaintiffs Joshua Seidman and Christopher Hanold after a traffic stop on January 24, 2016. They allege that aspects of the stop and their subsequent arrests and prosecutions violated their constitutional rights. They raise their claims pursuant to 42 U.S.C. § 1983 against the two New York State Troopers who arrested

1

them, Defendants Joseph Colby and David Dworkin.[1]

The issue presently before the Court concerns the arrest of Plaintiff Hanold. That arrest occurred in the driveway of his home. The parties agree that the arrest was warrantless. Plaintiffs allege that this arrest violated Hanold's Fourth Amendment rights because the officers who arrested him did not possess an exception to the warrant requirement and the arrest occurred in the curtilage of his home. The Court found that there was a question of fact about whether the place where the arrest occurred constituted the curtilage and denied the motion for summary judgment. Because the Second Circuit Court of Appeals has directed courts to resolve issues of qualified immunity as early in the litigation as possible, and because the Court suspected the question of whether the warrant requirement applied in the curitlage was unsettled in this Circuit, the Court directed the parties to brief the issue of qualified immunity.

## II.  Legal Standard

At issue here is qualified immunity. "Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Stephenson v. Doe, 332 F.3d 68, 76 (2d Cir. 2003) (quoting McCardle v. Haddad, 131 F.3d 43, 50 (2d Cir. 1997)). Qualified immunity also applies when "'it was 'objectively reasonable' for [the officer] to believe that [his or her] actions were lawful at the time of the challenged act.'" Betts v. Shearman, 751 F.3d 78, 83 (2d Cir. 2014) (quoting Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007)).

---

[1]Plaintiffs named Dworkin as "John Doe" in the case caption.

**III.      Analysis**

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). "[C]ourts may grant qualified immunity on the ground that a puported right was not 'clearly established' by the prior case law, without resolving the more difficult question whether the purported right exists at all." Id. "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)).  As such, "existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" Id. (quoting al-Kidd, 563 U.S. at 741). "This demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" Id. (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  "To determine whether a right is clearly established," a court will "'generally look to Supreme Court and Second Circuit precedent existing at the time of the alleged violation.'" Vasquez v. Maloney, 990 F.3d 232, 238 (2d Cir. 2021) (quoting Garcia v. Doe, 779 F.3d 84, 92 (2d Cir. 2015)). This inquiry should look at the "'the specific context of the case,'" an examination "'especially important in the Fourth Amendment context, where . . . it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'" Id. (quoting Mullenix v. Luna, 577 U.S. 7, 12 (2015)). A reviewing court need not identify "'a case directly on point . . . but existing precedent must have placed the statutory or constitutional question beyond debate.'" Id. (quoting al-Kidd, 563 U.S. at 741).  "[T]here must be 'a case where an officer acting under

similar circumstances . . . was held to have violated the Fourth Amendment' . . . such that the unlawfulness of the defendant officer's conduct would 'follow immediately.'" Id. (quoting, in turn, White v. Pauly, 137 S.Ct. 548, 552 (2017), and Wesby, 138 S.Ct. 577, 590) (internal citations omitted)).

The question here is whether the arrest of Hanold in the driveway of his home, if the driveway is part of the curtilage, violated a clearly established Fourth Amendment right. Plaintiffs, in part, contend that the Court's finding that a question of fact "probably" existed as to whether the arrest occurred in the curtilage of the home precludes a finding that qualified immunity applies. Plaintiffs are mistaken in this respect. The Court found that, assuming that a warrantless arrest in the curtilage violated the Fourth Amendment, a question of fact existed as to whether the arrest occurred in the curtilage. The ability of a jury to decide that fact has no bearing on whether "every reasonable official would understand" that making an arrest in the curtilage violated the Fourth Amendment.[2] Wesby,

---

[2]Plaintiffs cite to Thomas v. Roach, 165 F.3d 137 (2d Cir. 1999), for the proposition that "[s]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." Thomas, 165 F.3d at 143. In Thomas, the plaintiff alleged that officers used excessive force when they shot him. The Court of Appeals found that "the trial court should not have granted summary judgment on qualified immunity grounds unless it concluded that the only result a fair jury could reach is that reasonable police officers could disagree about whether the force used against Thomas was excessive. The district court could not properly reach this conclusion if any material facts were in dispute." Id. The Court then pointed out the material facts that were in dispute: "(1) whether Thomas was armed at the time of the shooting; (2) whether Thomas attempted to harm Officer Roach before the first volley of shots; (3) whether it was feasible for the officers to warn Thoams before shooting him; and (4) whether Thomas lunged at Roach before the first volley of shots such that Roach had to shoot Thomas three more times." Id. Since "the district could not determine whether the officers reasonably believed that their force was not excessive when several material facts were still in dispute, summary judgment on the basis of qualified immunity was precluded." Id. at 144. The same situation does not exist here. While there may be a

(continued...)

138 S.Ct. at 589 (internal citation omitted).

"Because a person's right to be free from 'unreasonable government intrusion' in his home 'stands at the very core of the Fourth Amendment, . . . searches and seizures inside a home without a warrant are presumptively unreasonable." Groh v. Ramirez, 540 U.S. 551, 559 (2004). "[I]n the absence of exigent circumstances, the Amendment prohibits law enforcement officials from making a warrantless and nonconsensual entry into a suspect's home to arrest him." United States v. Allen, 813 F.3d 76, 77 (2d Cir. 2016). As a general matter "'driveways that are readily accessible to visitors are not entitled to the same degree of Fourth Amendment protection as are the interiors of defendants' houses.'" United States v. Reyes, 283 F.3d 446, 465 (2d Cir. 2002) (quoting United States v. Reilly, 76 F.3d 1271, 1279 (2d Cir. 1996)). Courts have therefore concluded that "a law enforcement officer's presence on an individual's driveway when that officer was in pursuit of legitimate law enforcement business" does not violate the Fourth Amendment. Id. Recent cases in this Circuit have concluded that doing such police business in a homeowner's driveway does not violate the Fourth Amendment. See, e.g., Lilly v. Hall, No. 16-cv-242, 2019 U.S. Dist. LEXIS 10152, at *15 (W.D.N.Y. Jan. 22, 2019) (finding no Fourth Amendment violation when police officers issued a ticket in the driveway because "[t]hat is precisely the sort of police purpose for which officers may enter areas reasonably accessible to visitors without implicating the Fourth Amendment."); Marom v. Town of Hempstead, No. 14-cv-3005, 2017 U.S. Dist. LEXIS 217330 at *18-19 (E.D.N.Y. Mar. 22, 2017) (no Fourth Amendment

---

²(...continued)
question of fact about whether the arrest occurred in the curtilage, whether the arrest actually occurred in the curtilage is not material to the question of whether an arrest in the curtilage violated a clearly established right.

violation for serving valid summons in driveway); Jackson v. Waterbury Police Dep't, No. 11-cv-442, 2015 U.S. Dist. LEXIS 119771 at *15 (D. Conn. Sept. 8, 2015) (police officers did not violate Fourth Amendment by engaging in police business in a driveway after making a traffic stop).

      Following this logic, an arrest without a warrant or exigent circumstances in the driveway would likely not violate the Fourth Amendment.  Here, however, the Court has found that a question of fact exists of whether the arrest occurred in an area of the driveway entitled to more Fourth Amendment protection. "The curtilage–that is, the area adjacent to the home and to which the activity of home life extends–is considered part of a person's home and enjoys the same protection against unreasonable searches as the home itself." United States v. Alexander, 888 F.3d 628, 631 (2d Cir. 2018).  A search of the curtilage not authorized by a warrant or some exception to the warrant requirement violates the Fourth Amendment.  Id.  At the same time, the Fourth Amendment does not apply to "that portion of private property that extends outside a home's curtilage–what the caselaw terms an 'open field.'" Id. (quoting Florida v. Jardines, 569 U.S. 1, 6 (2013)).

      Pointing to caselaw that extends Fourth Amendment protection to the curtilage, particularly to Florida v. Jardines, Plaintiffs argue that "Defendants were aware that (1) a warrantless, exigent-less, and non-consensual seizure of a person within a protected premises violates the Fourth Amendment; and (2) the curtilage is a protected premises in that it is part of the home itself and afforded the same protections under the Fourth Amendment."  They do not point, however, to any cases that find that an arrest, as opposed to a search, in the curtilage constitutes a Fourth Amendment violation.  From Plaintiffs' argument, Defendants would have had to draw a conclusion from existing case law that a

6

warrantless arrest in the curtilage violated the Fourth Amendment because a warrantless search in the curtilage does. Defendants have not pointed to any Supreme Court or Second Circuit case that reaches this conclusion. Under these circumstances, the Court cannot find that the right that the officers allegedly violated–arresting a person in the part of their driveway that constituted the curtilage–was clearly established under the relevant precedent. Summary judgment on qualified immunity grounds is appropriate on this claim.

## IV.   CONCLUSION

Having considered the issues before the Court, the Court concludes that qualified immunity is appropriate for the Defendants on Plaintiff Hanold's claim in Count 2 of Plaintiffs' complaint. The Court will therefore amend its earlier order on Defendants' motion for summary judgment, dkt. # 51, to grant Defendants' motion on that claim as well.

**IT IS SO ORDERED.**

Thomas J. McAvoy
Senior, U.S. District Judge

Dated: January 14, 2022